**CITY OF RAYMORE, Missouri, Appellant,**

v.

**Lori L. O'MALLEY, Respondent.**

**WD 80152**

Missouri Court of Appeals, Western District.

OPINION FILED: August 29, 2017

Jonathan Sternberg and Ashlyn Buck Lewis, Kansas City, MO, Attorneys for Appellant.

Lyle M. Gregory, Raymore, MO, Attorney for Respondent.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, and Karen King Mitchell and Anthony Rex Gabbert, Judges

Karen King Mitchell, Judge

The City of Raymore appeals the grant of Lori L. O'Malley's motion to dismiss the municipal charge of disorderly conduct against her. City brings three points on appeal, each challenging a separate ground for dismissal argued in O'Malley's motion below. Because the dismissal cannot be supported upon any of the grounds raised in O'Malley's motion, we reverse the dismissal and remand the matter for further proceedings.

## Background [1]

On September 13, 2014, O'Malley was charged by uniform citation with disorderly conduct for "[a]ct[ing] in a violent manner by pushing a door against another; [f]ighting in public." City subsequently filed an amended information, charging O'Malley with disorderly conduct under § 210.230(A)(5) of City's Municipal Code, alleging that, on September 13, 2014, she

> did then and there assemble or congregate with another or others for the purpose of causing, provoking, or engaging in any fight or brawl, to wit: did recruit and bring onto the scene a number of unknown male parties with the intention of "find[ing] some big guys to throw [Larry D. Wiseman and Warren O. Wiseman] out" of the building in which they were located.

On February 5, 2015, O'Malley was found guilty in municipal court and given a suspended imposition of sentence, which consisted of a fine of $300. O'Malley thereafter filed an application for a trial de novo in the Cass County Circuit Court. There, she filed a motion to dismiss on three grounds, claiming: (1) the information does not charge a crime; (2) the disorderly conduct ordinance under which she was charged was unconstitutionally vague; and (3) the disorderly conduct ordinance was overbroad and infringed upon the First Amendment right to freedom of expression. City filed a response to O'Malley's motion, arguing that the information was sufficient and that O'Malley had waived her constitutional challenges by failing to raise them at the first opportunity.

On March 14, 2016, the circuit court received arguments on O'Malley's motion to dismiss, wherein O'Malley argued that the matter should be dismissed because O'Malley was acting in defense of property when she engaged in the conduct underlying the disorderly conduct charge and, therefore, was legally justified and could not be prosecuted.[2] In making the argument, O'Malley referred the circuit court to evidence and transcripts from the municipal court hearing. City argued that, because the matter was before the court as a trial de novo, the court was not permitted to consider any of the evidence relied upon by O'Malley. City also disputed many of the underlying facts as alleged by O'Malley and argued that the court could not rule on O'Malley's motion without first receiving evidence itself. Despite City's representation that the facts were in dispute, O'Malley argued that the court could rely on the evidence because the necessary facts were undisputed. The court then asked to meet with the parties in chambers.

Following the in-chambers meeting, back in open court, the parties indicated they had reached an accord: City agreed to a one-year diversion of O'Malley's case and, so long as there were no further similar incidents, City would dismiss the charge at the end of the one-year period. But, on August 23, 2016, O'Malley reasserted her right to a jury trial on the charge.[3] Accordingly, the court set the matter for trial.

O'Malley again argued her motion to dismiss to the court, claiming that, taking all of City's allegations as true, there was

---

1. Because this matter comes before us following a motion to dismiss, "we accept the allegations in the petition as true and grant the plaintiffs all reasonable inferences from those allegations." *Gerke v. City of Kansas City*, 493 S.W.3d 433, 436 (Mo. App. W.D. 2016).

2. O'Malley presented no arguments regarding her constitutional challenges.

3. Because City has not challenged O'Malley's reassertion of her right to a jury trial, we need not decide the propriety or legality of her doing so.

no crime because O'Malley was acting in defense of property.[4] City again countered that "[w]hether [the statute defining defense of property] applies in this case or not is going to be subject to this Court to decide after the evidence has been presented." The parties again debated the underlying facts, prompting the court to ask if they had considered instructing the jury on defense of property. O'Malley indicated that she had prepared an instruction to that point, and when asked if it approved, counsel for City stated: "Well, I'm going to wait till the evidence is in before I can determine whether or not it's supported by the facts, and that's what we have a trial for, Judge."

Following the hearing, the court granted O'Malley's motion to dismiss by docket entry without any indication as to its rationale. City appeals.

## Standard of Review

■ "We review the grant of a motion to dismiss *de novo* and will affirm the dismissal on any meritorious ground stated in the motion." *Gerke v. City of Kansas City*, 493 S.W.3d 433, 436 (Mo. App. W.D. 2016). "In reviewing the petition to determine if it states a claim, we accept the allegations in the petition as true and grant the plaintiff[ ] all reasonable inferences from those allegations." *Id.* "We do not weigh the factual allegations to determine their credibility or persuasiveness." *Id.* "Rather, we review the petition 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.'" *Id.* (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012)).

### A. O'Malley was not entitled to dismissal on the basis of her claimed justification based on defense of property.

■ In its first point, City argues that it was improper to dismiss the information on the basis of O'Malley's claimed justification based on defense of property. We agree.

To begin, O'Malley was charged with violating § 210.230(A)(5) of City's Municipal Code. That section defines disorderly conduct, in pertinent part, as occurring when "[a]ny person ... shall assemble or congregate with another or others for the purpose of causing, provoking, or engaging in any fight or brawl." RAYMORE, MO., MUN. CODE § 210.230(A)(5) (2017), https://www.municode.com/library/mo/raymore/codes/code_of_ordinances. O'Malley moved to dismiss arguing, in part, that the information failed to charge a crime.

■ "When ruling on a motion to dismiss premised upon a claim that the charging document failed to charge an offense, the court need not examine evidence outside the four corners of the charging document itself." *State v. Wright*, 431 S.W.3d 526, 533 (Mo. App. W.D. 2014). Rather, "[t]he fundamental test of the sufficiency of an information is whether or not it states the essential elements of the offense charged so that the defendant is adequately informed of the charge against [her] and the final disposition of the charge will constitute a bar to further prosecution for the same offense."

*Id.* (quoting *State v. Miller*, 372 S.W.3d 455, 467 (Mo. banc 2012)).

Here, the information tracked the ordinance verbatim, alleging that O'Malley engaged in disorderly conduct by "as-

4. This time, O'Malley asserted that the ordinance was both vague and overbroad, but made no arguments in support of those asser-tions beyond claiming that the ordinance criminalized conduct that was justifiable as defense of property.

sembl[ing] or congregat[ing] with another or others for the purpose of causing, provoking, or engaging in any fight or brawl." It then stated the factual basis for the charge, alleging that O'Malley "recruit[ed] and br[ought] onto the scene a number of unknown male parties with the intention of 'find[ing] some big guys to throw [Larry D. Wiseman and Warren O. Wiseman] out' of the building in which they were located." All of these allegations combined rendered the information sufficient to serve the purposes of both adequately informing O'Malley of the charge against her and ensuring that a final disposition of the charge will constitute a bar to further prosecution for the same offense. Thus, contrary to O'Malley's argument below, the information charged an offense.

O'Malley argued below that she had a valid justification defense under the facts—defense of property. Under § 563.041.1, RSMo Cum. Supp. 2016, "[a] person may ... use physical force upon another person when and to the extent that ... she reasonably believes it necessary to prevent what ... she reasonably believes to be the commission or attempted commission by such person of stealing, property damage or tampering in any de-

gree." [5] "The defendant shall have the burden of injecting the issue of justification under this section." § 563.041.4. There are multiple flaws with the premise of O'Malley's argument.

To begin, when a statute indicates that a party has the burden of injecting an issue, "[t]he issue referred to is *not* submitted to the trier of fact *unless supported by evidence.*" § 556.061(3)(a) (emphasis added). In other words, such an issue must be based on evidence before a trier of fact may even consider it. In this case, O'Malley raised the issue pretrial before the presentation of *any* evidence. Thus, it is difficult to fathom how her claim could have been supported by any evidence, given that none had been introduced or admitted at the time the court granted dismissal.

O'Malley repeatedly relied on facts and evidence presented at the municipal hearing to support her claimed defense. But "[t]he concept of a trial de novo reflects, as the name implies, a new proceeding in most respects and, in a criminal or quasi-criminal case, it is a new prosecution." *City of Kansas City v. Johnney*, 760

---

5. Because defense of property is used to justify the use of physical force against another person, we question whether it is even an available defense to O'Malley's disorderly conduct, as charged. "Justification based upon defense of property is limited in scope 'to the use of *physical force* by a person to prevent stealing, property damage or tampering.'" *State v. Moseley*, 705 S.W.2d 613, 617 (Mo. App. E.D. 1986) (quoting § 563.041.1 comment). The conduct forming the basis for City's charge was "assembl[ing] or congregat[ing] with another or others"; there was no allegation of physical force used by O'Malley against another person, and physical force is not needed to assemble or congregate people wishing to join voluntarily. So it is unclear what exactly she was seeking to justify through a claimed defense of property. *See People v. Brant*, 394 Ill.App.3d 663, 675-76,

334 Ill.Dec. 111, 916 N.E.2d 144 (Ill. Ct. App. 2009) (holding that "[w]ithin the broad range of conduct under the offense of disorderly conduct, only some behaviors, *i.e.*, those involving physical force presenting the threat of bodily harm, will fall within the ambit of section 7-1 [Illinois's statute providing for self-defense and defense of others]."). If a justification defense is available to her under the facts, it would more likely be the necessity defense outlined in § 563.026.1, which applies to *any* "conduct which would otherwise constitute any offense other than a class A felony or murder" under certain circumstances, as opposed to solely physical force. The necessity defense, unlike defense of property, is an affirmative defense, meaning that it must be supported by evidence at trial and the defendant bears the burden of persuasion. §§ 563.026.3, 556.061(2).

S.W.2d 930, 931 (Mo. App. W.D. 1988). "The trial de novo proceeds as if no action had been taken in the municipal division and as though the case had originated in the de novo court rather than in the municipal court." *Id.* "The de novo court does not sit as an appellate court to consider alleged irregularities in the lower court." *Id.*

> In both procedural and substantive terms, a trial de novo in the circuit court of a prosecution first initiated in the municipal court for the violation of a city ordinance proceeds as an original cause in the circuit court. The accused enjoys the presumption of innocence, the prosecution has the burden of proof and the previous conviction in the municipal court is ignored.

*Id.*

Furthermore, as noted above, "[w]hen ruling on a motion to dismiss premised upon a claim that the charging document failed to charge an offense, the court need not examine evidence outside the four corners of the charging document itself." *Wright*, 431 S.W.3d at 533. "The trial court's reliance on extensive facts, not included in the information, raises the possibility that the trial court attempted to grant something akin to summary judgment in favor of [O'Malley] on the criminal

charges." *Id.* "But, unlike in civil cases, there is no currently recognized procedural mechanism in Missouri akin to summary judgment in the criminal context."[6] *Id.*

▇▇▇ That being said, it is possible for a court to properly grant a motion to dismiss based on an affirmative defense.[7] But "[s]ustaining a motion to dismiss based on an affirmative defense requires that the defense be irrefutably established *by the pleadings.*" *State v. Dowell*, 311 S.W.3d 832, 837 (Mo. App. E.D. 2010) (emphasis added). The only pleadings in this case are the uniform citation and the amended information; neither pleading irrefutably establishes that O'Malley's conduct was justified by defense of property as laid out in § 563.041.1.

For all of the above reasons, O'Malley was not entitled to dismissal on the basis of her alleged justification defense.

Point I is granted.

### B. The disorderly conduct ordinance, as charged, was neither vague nor overbroad.

In its second and third points, City argues that the circuit court erred in granting O'Malley's motion to dismiss on her claims that the ordinance was both uncon-

---

6. O'Malley also argues that the court could rely on outside information because City essentially conceded all the facts necessary to establish defense of property. She relies on *State v. Topel*, 322 S.W.2d 160, 162 (Mo. App. 1959). *Topel*, however, does not support her claim. In *Topel*, the defendant filed a motion to dismiss the information on the ground that the charge was unsupported by sufficient evidence. *Id.* at 161. More specifically, the defendant was charged with contempt for refusing to answer a question before the Workman's Compensation Commission and instead asserting her Fifth Amendment right against self-incrimination. *Id.* The *Topel* court indicated that it was acceptable for the trial court to rely on facts the State indicated it would rely

on at trial to prove the charge when ruling the motion to dismiss. *Id.* at 162. "That statement, however, was dicta inasmuch as the issue before the court was whether the claimant could be charged with contempt as a result of the refusal to testify." *Williams v. Gary Breedlove Const., Co.*, 950 S.W.2d 557, 562 (Mo. App. S.D. 1997). But even if *Topel* could support O'Malley's argument, it is distinguishable, as the relevant facts here were *not* conceded by City.

7. As noted, supra, defense of property is not an affirmative defense, but one where the defendant bears the burden of injecting the issue.

stitutionally vague and overbroad. We agree.

### 1. The ordinance is not unconstitutionally vague.

"The Due Process Clause requires that state criminal statutes demonstrate a basic level of clarity and definiteness." *State v. Faruqi*, 344 S.W.3d 193, 199-200 (Mo. banc 2011). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Id.* (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939)).

O'Malley's only argument for why the ordinance is vague is because it purportedly " 'advises' citizens of something which is not even true"; she claims that "it simply is not true that gathering for the purpose of an alleged 'fight' is unlawful when the acknowledged purpose of the threatened physical altercation is perfectly legal: the ejectment, by force if necessary, of those who are actively engaged in destroying the arrestee's property." In other words, O'Malley's vagueness argument is based upon her belief that her conduct was justified as defense of property. But, as discussed above, defense of property is a defense upon which a defendant bears the burden of injecting the issue, and it "is not submitted to the trier of fact unless supported by evidence." § 556.061(3)(a). And, even if this defense is both available to O'Malley and supported by evidence she expects to be introduced at a trial, it is not universally true that "assembl[ing] or congregat[ing] with another or others for the purpose of causing, provoking, or engaging in any fight or brawl" will always be justified by a claim of defense of property. Just because a defense to the ordi-

nance may be applicable under one set of facts does not render the ordinance, as a whole, void for vagueness.

The ordinance is sufficiently clear "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Faruqi*, 344 S.W.3d at 199. Thus, it is not void for vagueness, and to the extent the circuit court relied upon this ground in granting dismissal, it erred.

Point II is granted.

### 2. The ordinance is not unconstitutionally overbroad.

"The freedom of speech guaranteed in the United States and Missouri Constitutions limits the ability of our legislature to criminalize spoken words." *State v. Roberts*, 779 S.W.2d 576, 578 (Mo. 1989). "The purpose of the overbreadth doctrine is to ensure that a statute does not punish innocent conduct." *State v. Beine*, 162 S.W.3d 483, 487 (Mo. banc 2005). "The overbreadth doctrine restricts statutes that prohibit not only unprotected behavior, but also constitutionally protected behavior." *Roberts*, 779 S.W.2d at 579. But "[w]here conduct and not merely speech is regulated, a statute must be *substantially* overbroad, not only in an absolute sense but also relative to the statute's plainly legitimate sweep." *State v. Vaughn*, 366 S.W.3d 513, 518 (Mo. banc 2012) (emphasis added). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)).

As with the void-for-vagueness challenge, O'Malley's argument to support dismissal on her overbreadth argument relies solely on her claim that the ordinance

could not criminalize conduct used in defense of property. That is plainly *not* what the ordinance does. The ordinance outlaws assembly and congregation—acts typically protected by the First Amendment—for specific unlawful purposes, namely to cause, provoke, or encourage a fight or brawl. The inclusion of these specific purposes takes the ordinance outside the protection of the First Amendment insofar as it limits its scope to speech or conduct suggestive of "fighting words."

 "[T]he right of free speech is not absolute at all times and under all circumstances." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* at 571-72, 62 S.Ct. 766. "These include ... 'fighting' words—those which by their very utterance inflict injury or tend *to incite an immediate breach of the peace.*" *Id.* at 572, 62 S.Ct. 766 (emphasis added). "[S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.*

City's disorderly conduct ordinance, as charged against O'Malley, plainly prohibited conduct designed "to incite an immediate breach of peace" by prohibiting assembly for the purpose of causing, provoking, or encouraging a fight or brawl. Accordingly, it criminalizes only conduct outside the protection of the First Amendment and, therefore, is not subject to an overbreadth analysis. *See State v. Jeffrey*, 400 S.W.3d 303, 309 (Mo. banc 2013) (holding that overbreadth challenges are limited to cases involving the First Amendment).

O'Malley relies on numerous cases where disorderly conduct laws were struck down on overbreadth grounds, but the laws in all of those cases differed significantly from the ordinance before us; thus, those holdings are inapposite. Because the conduct regulated by City's ordinance is not within the protection of the First Amendment, any dismissal based on a determination that the ordinance was unconstitutionally overbroad was erroneous.

Point III is granted.

## Conclusion

Having determined that none of the rationales raised in O'Malley's motion to dismiss justified dismissal of the amended information, we reverse the circuit court's order and remand the matter for further proceedings consistent with this opinion.

Edward R. Ardini, Jr., Presiding Judge, and Anthony Rex Gabbert, Judge, concur.